## FITCH *vs.* HALL and others.

25b      13
40 Mis'593

Where hay, belonging to two individuals, was consigned to a third, to be sold by him, upon an agreement that, instead of the usual commissions of an agent or factor, the consignee should retain one half of the proceeds of the sale, after reimbursing the consignors the amount of the cost of the property; *Held* that this did not constitute a *partnership* between the parties.

Although a community of profits in a mercantile adventure is the usual test of partnership, it is not an invariable test. It may be resorted to as a mere mode of compensation for services.

THIS was an appeal, by the plaintiff, from a judgment rendered against him, in favor of the defendant Hall, upon the report of a referee. The action was brought by the plaintiff, as assignee of Aaron B. Akin, to recover a balance claimed to be due for hay alleged to have been sold by Akin to the defendants Wardwell & Bardwell and the defendant Hall. The referee reported that there was due to the plaintiff from Wardwell & Bardwell $693.95, but that Hall was neither individually liable to the plaintiff, nor jointly with Wardwell & Bardwell. The facts sufficiently appear in the opinion of the court.

*J. K. Porter*, for the plaintiff.

*H. G. Wheaton*, for Hall.

*By the Court*, HARRIS, J. Wardwell & Bardwell were engaged in business at Albany, as partners. The defendant Hall resided in Providence in the state of Rhode Island. For several years prior to September, 1846, Wardwell & Bardwell had been in the habit of sending to Hall various articles of produce, such as hay, flour, feed, &c. to be sold. The arrangement between them was, that upon the sale of the property thus sent to Hall, he should return to Wardwell & Bardwell its cost and one half the profits, retaining the other half for his own compensation. It was proved, upon the trial, that on a certain occasion, in the fall of 1846, Hall was at the store of Wardwell & Bardwell, in Albany, and while there, Wardwell asked him if he would like to go into an operation in hay, to which Hall replied

that he would; that Wardwell then added that he knew of a lot of hay which could be obtained " pretty reasonable," and, if he had time, they would ride down and see it. They accordingly went, that day. When they returned, Wardwell told Bardwell, in the presence of Hall, that they had bought Akin's hay. It was proved by another witness who had a conversation with Hall, while the hay was being loaded, in the presence of Wardwell and Bardwell, that Hall said Wardwell & Bardwell had purchased the hay, and he was to sell it and divide the profits with them.

Akin himself was examined as a witness for the plaintiff, and testified that he supposed he sold the hay to all three of the defendants; that when Hall and Wardwell came to see him, the latter introduced Hall as the gentleman, of whom he had before spoken to him, who wanted to join in the purchase of the hay; that they examined the hay, and after this, Wardwell told him if he would call at the store next morning, they would give him an answer; that he called next morning, and Wardwell told him they had concluded to buy the hay; that he inquired for Hall, and Wardwell told him he had gone home.

The assignor of the demand having been examined as a witness for the plaintiff, the defendant Hall also offered himself as a witness and was examined. He testified that he had no interest in the purchase; that he went with Wardwell to examine the hay, and was introduced to Akin by Wardwell, but nothing was said while he was there, about buying the hay; that he had nothing to do with the shipping of the hay; that the hay was sent to him by Wardwell & Bardwell in the same way as they had been in the habit of sending other property to be sold on joint account. The defendant Hall also offered the testimony of the defendant Wardwell to show that he was not interested in the purchase of the hay. The testimony, though objected to, was received, and the witness testified that Hall was not interested with Wardwell & Bardwell in the purchase.

This is the substance of the testimony. The most that can be said of it is, that it presented a question of fact for the determination of the referee. That question was, whether

Fitch *v.* Hall.

the purchase was made by Wardwell & Bardwell, as similar purchases had previously been made, or whether it was made by Bardwell and Hall. It may be, that the testimony would have warranted a decision of this question in favor of the plaintiff, but the referee thought the preponderance was in favor of the defendant Hall, and it was a question which it was his province to decide. I do not think his finding should be disturbed.

The only other question in the case is, whether the manner in which the hay was disposed of rendered Hall liable as a partner. The hay was sold by him on the joint account of himself and Wardwell & Bardwell. The profits arising from the purchase and sale were equally divided between them. It was the hay of Wardwell & Bardwell. So the referee has found, and so we are to assume, in determining this question. They purchased the hay upon their own credit, and sent it to Hall to be sold. In the absence of any special agreement between them, Hall would have been accountable to Wardwell & Bardwell for the proceeds of the hay, and would have been entitled to retain, out of such proceeds, his commissions for making the sale. The relation between them would have been that of principal and agent or factor. Such commissions would have been chargeable upon the amount of sales, whatever the cost of the hay or the amount realized upon its sale. But, by the understanding between the parties, Hall was to retain, instead of the usual commissions, the one half of the proceeds, after reimbursing Wardwell & Bardwell the amount expended by them in the purchase. Did that constitute a partnership? It is true that a community of profits in a mercantile adventure is the usual test of partnership, but it is not an invariable test. It may be resorted to as a mere compensation for services. I think it is to be so regarded in this case. Wardwell & Bardwell were at liberty to do with the hay what they pleased. But if they elected to send it to Hall, he had agreed that he would sell it for them to the best advantage, without charge or compensation, unless it should happen to sell for more than it had cost, in which event he was to have, for his services, half the profits

made upon the adventure. The case is clearly within the rule, mentioned by Bronson, Ch. J., in *Burckle* v. *Eckart,* (1 *Denio,* ,337,) which allows one man to employ another as a subordinate in his business, and agree to pay him out of the profits, if any shall arise, without giving him the rights, or subjecting him to the liabilities, of a partner. (2 *Kent's Com.* 25, *note.* *Smith* v. *Wright,* 1 *Abbott,* 243.) Had it been agreed that Hall should not only share in the profits arising from the sale, but should also, in case the hay should not sell for enough to pay what it had cost, bear a part of the loss, he might have been liable to third persons as a partner. (*See Smith* v. *Watson,* 2 *Barn. & Cr.* 401 ; *Reed* v. *Hollinshead,* 4 *id.* 867.) But it is not pretended that Hall was, in any event, to be liable to Wardwell & Bardwell for any part of their loss.

I am of opinion that the judgment should be affirmed.