J. FOSTER, R. A. CLARKSON AND D. Y. BERRY, *Partners,*
*trading as* J. FOSTER & COMPANY, v. WALTER S. FIELD
AND C. S. SAXTON, *Partners, trading as* FIELD & SAX-
TON, AND J. S. FESSENGER, JR., *Receiver,* AND JEROME
HILL COTTON COMPANY AND ACME MILLING COMPANY,
*Interpleaders.*

(Filed September 10, 1903.)

1. LIEN—Not Superior to Creditor's Claims, When. A lien cannot be
obtained on the assets of an insolvent partnership, in the hands
of a receiver appointed in a case brought for the dissolution of
the partnership, superior to the claims of creditors, who have
intervened in such action, and the assets in the hands of the re-
ceiver by the court ordered to be preserved for distribution among
the creditors, by taking judgment and filing a creditor's bill.

2. STATUTES—Construed. Section 2774, Wilson's Annotated Stat-
utes, can have no application where, in an action originally brought
by one partner against the other to dissolve the co-partnership, and
secure the appointment of a receiver, with the intent to delay
and defraud creditors, creditors have intervened, secured the
removal of the receiver, the appointment of another, and an order
of the court preserving the assets of the partnership for distribu-
tion among the creditors, and the action as to such assets has
passed wholly beyond the control of the partners.

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; be-*
*fore Bayard T. Hainer, Trial Judge.*

*Frederick King* and *H. Y. Thompson,* for plaintiffs in
error.

*D. B. Madden, L. G. Pitman* and *Selwyn Douglas,* for
defendants in error.

Opinion of the court by

BEAUCHAMP, J.:    On the first day of January, 1898,
the plaintiff commenced this action against defendants in
the district court of Pottawatomie county.    A demurrer to
the petition by the defendant was filed on the 27th day of

January, 1898, and on the second day of April, 1901, plaintiffs filed their amended petition, which is of considerable length, and for the sake of space, we will only state sufficient thereof for an understanding of plaintiffs' cause of action, and all that is necessary for the purposes of this case. The plaintiffs allege that they are partners doing a wholesale business in the state of Arkansas under the firm name of J. Foster & Company; that the defendants, Walter S. Field and C. S. Saxton, were on the first day of December, 1896, and prior thereto, partners under the firm name of Field & Saxton, doing business in Shawnee, Pottawatomie county; that J. G. Fessenger, Jr., was a receiver duly appointed by the district court of Pottawatomie county for the firm of Field & Saxton; that on the 26th day of November, 1896, in the probate court for Pottawatomie county, the plaintiffs recovered judgment against the defendants, Field & Saxton, for the sum of $277.19 and costs; on the 25th day of May, 1897, plaintiffs caused execution to be issued from the probate court against the property of the defendants, Field & Saxton, which execution was delivered to the sheriff of Pottawatomie county, and was returned wholly unsatisfied for want of property whereon to levy the same; that on the 25th day of August, 1897, a transcript of said judgment was duly filed and docketed in the office of the clerk of the district court of Pottawatomie county, and that on said day executions were issued on said judgment from the office of said clerk, directed and delivered to the sheriff of Pottawatomie county, of which county Saxton was a resident, and to the sheriff of Oklahoma county, of which county Field was and is a resident, and that both executions were returned by the sheriffs wholly unsatisfied for want of property whereon to

levy the same; that after suit was filed by plaintiffs in the probate court, but before the recovery of judgment, Walter S. Field upon the 9th day of November, 1896, filed his petition in the district court of Pottawatomie county against C. S. Saxton, his partner, praying for a dissolution of the partnership and an accounting, and that a receiver be appointed to take possession of the property, business and affairs of the partnership, and for reasons alleging mismanagement, failure to comply with the contract of partnership, and neglect of the partnership business. On the 9th day of November, the judge of the district court made an order that W. W. Barto be appointed receiver of all the partnership property of Field & Saxton, under which said receiver filed his oath and bond as such, and took possession of all the property of the firm of Field & Saxton, and prevented the sheriffs from levying the executions on said property. On the 17th day of February, 1897, the Acme Milling Company, by leave of court, filed its interplea in the case of Walter S. Field against C. S. Saxton, praying for judgment against Field & Saxton in the sum of $294.88, and for an order of court directing the receiver to pay the same out of any moneys that may be or may come into his hands as receiver. On February 17th, 1897, the Jerome Hill Cotton Company, by leave of court, filed its plea of intervention in said cause, praying for judgment against Field & Saxton for the sum of $309.22, and for a like order. On the 16th day of March, 1897, the judge of the district court, on the application of the Acme Milling Company and the Jerome Hill Cotton Company, modified the order made on November 10, 1896, so as to prevent preference of favorite creditors, and on the 21st day of June, 1897, upon the motion of the Acme Milling Company and the Jerome Hill Cot-

ton Company, suspended the receiver, W. W. Barto, and appointed J. G. Fessenger, Jr., as his successor, and Fessenger filed his oath and bond as such receiver, and took possession of the. partnership property of Field & Saxton and took and held possession of said property, and excluded and prevented the plaintiffs from subjecting said property to their judgment against Field & Saxton, and the sheriff from levying the execution upon the property of Field & Saxton then in his hands. They further allege that there was sufficient property belonging to Field & Saxton to pay and satisfy plaintiffs' judgment, and from which property the same might have been fully collected, but for the collusive and fraudulent contrivances of defendants, Field & Saxton in this: That Field & Saxton collusively, fraudulently, and for the purpose of hindering and delaying the plaintiff in the collection of its claim, did collude and conspire with each other against the plaintiff to have W. W. Barto, who was a clerk in the office of Field & Saxton, appointed as receiver for the sole purpose of preventing plaintiff from collecting their claim by levying the executions on the property of Field & Saxton, and of continuing the business of Field & Saxton under the cloak of a receiver, thereby hindering, delaying and preventing the collection of the judgment of plaintiff against Field & Saxton; and further allege that the defendant, Field, in collusion with the defendant, Saxton, agreed that the suit for the dissolution of the partnership and accounting, and appointment of a receiver, should be brought for the sole purpose of preventing the plaintiffs' immediate collection of the claim due by Field & Saxton, as well as other claims due by them to other creditors, and by false and fraudulent representations made to the judge

of the district court, induced the judge to appoint the receiver in the case of Field against Saxton, which appointment was obtained for the purpose of hindering and delaying the plaintiff in the collection of its claim, and to enable Field & Saxton to carry on their business in the name of the receiver without the interference of creditors, and not honestly for the purposes stated in the petition filed in said cause; that the defendants, W. S. Field and C. S. Saxton, and the firm of Field & Saxton, were on the first day of January, 1897, and for at least twelve months prior thereto, wholly insolvent, and had no property in their possession subject to execution whereon plaintiffs could make the amount of their judgment, but all their property not exempt by law from execution and attachment was and is held by the receiver subject to the order of the court, the receiver being at the time of the filing of the petition one F. L. Dobbin, appointed by the district court long after the filing of the original petition in this cause, and upon the removal of J. G. Fessenger, Jr., theretofore appointed in said cause of Field against Saxton; and that plaintiffs have no full and adequate remedy at law. And further allege that other creditors of the firm of Field & Saxton claim to have claims against said firm, and upon the property in the hands of the receiver, the exact nature of which claims plaintiffs are unable to state, but alleges that whatever claims or liens said creditors or any of them may have upon said property in the hands of the receiver or belonging to said Field & Saxton, they are inferior and subject to the lien of these plaintiffs, and prays that the orders appointing the receiver, and any or all of them, be vacated, revoked, and set aside, and said receivership be declared void and of no effect; and that the person holding possession of the property of Field

& Saxton by order of the district court, be declared by the court to hold the same as the agent of the said Field & Saxton, and that the property of the said Field & Saxton in the possession of any officer of the court, or in the possession of F. L. Dobbin, or under his control, be subject to the lien of the judgment of the plaintiff, and that the lien of the said judgment be declared the first lien upon the property of defendants, Field & Saxton, and be by the court ordered to be fully paid and satisfied out of the moneys of Field & Saxton in the custody and control of the court.

To the petition the defendant, J. G. Fessenger, Jr., and his successor, F. L. Dobbin, demurred, for the reason as alleged that the petition did not state facts sufficient to constitute a cause of action against him and in favor of plaintiff, which demurrer was on the 25th day of November, 1901, by the court sustained; and the plaintiffs electing to stand upon their petition, the cause was by the court dismissed at the costs of plaintiffs in error, to reverse which order the case comes here by petition in error.

Plaintiffs in error rely upon the allegations of the petition that the action for the dissolution of the partnership and the application for the appointment of a receiver were collusively and fraudulently made, and was for the purpose of delaying and defrauding the plaintiff as creditor, and to hinder and delay the collection of its debt, and directs our attention to section 2774, page 684, Wilson's Statutes, 1903, which provides:

"Every transfer of property made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their succes-

sors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

As will be observed, the plaintiff alleges that Field & Saxton were wholly insolvent on the first day of January, 1897, which was several months before plaintiff caused execution to issue on their judgment, and long before the original order appointing the receiver was modified so as to prevent preference of favorite creditors.   The record does not show the order or the character of the order of the court removing Barto and appointing Fessenger receiver, and there is no allegation in the petition of plaintiff, or charge of any collusion or fraud on the part of the Acme Milling Company or the Jerome Hill Cotton Company, or the receiver, Fessenger, who succeeded Barto, but only that the purpose of the original action of Field & Saxton to dissolve the partnership and secure the appointment of Barto receiver, was fraudulent and collusive, and for the purpose of hindering and delaying the collection of plaintiff's claims.   It will also be observed that this action is for the priority of payment of plaintiff's judgment out of the fund of insolvent debtors in the hands of a receiver to the exclusion of other creditors equally meritorious; that the executions issued on plaintiff's judgment were not levied upon any of the assets of the firm of Field & Saxton in the hands of the receiver, or that the plaintiffs in any manner acquired any lien thereon.   Neither partner had any property subject to execution, nor did the firm have any assets other than those in the hands of the receiver.   It is not insisted that the creditor's bill should be declared to have created a lien on the assets of the firm in the hands of the receiver, and entitle them to priority of payment of their

judgment against the firm, over other creditors. Neither is it pretended that it is upon the principle that the diligent creditor is rewarded for his superior diligence in discovering assets that would not otherwise have been brought to light, for it is not claimed that plaintiffs filed their creditor's bill with a view to discovering assets other than those in the hands of the receiver.

It is conceded that the funds and property in this case were in the hands of the receiver when plaintiff filed his petition in this case and that the same were not subject to levy upon execution. The receiver is a mere officer of the court, and his possession is the custody of the law. The property and funds were in the hands of the receiver for the benefit of the party or parties who shall ultimately be found by the court to be entitled to them, and if the plaintiff in this action should finally be ascertained and determined to be the party entitled to them, the receiver would be then considered as plaintiff's receiver, and it is a well settled principle of law that courts will not permit property in the possession of the receiver to be distributed without the consent of the court appointing such receiver. If the contention of the plaintiff is to be sustained, it would be to declare a lien adverse to the rights of the receiver, so as to control the distribution to be made, and withdraw the funds from the custody of the law, and to apply the same to the payment of his judgment to the exclusion of the other creditors who have intervened and asserted their rights in this action, and to defeat the purpose and order of the court in declaring an equal distribution among the several creditors, and to declare a preference in favor of the plaintiff. It has been held in some cases that

where a receiver is appointed to hold property pending litigation between partners for the dissolution of the partnership, that creditors are not bound to wait until the equities between the partners may be adjusted, upon the principle that that might never be done, or that the proceeding might be dismissed, and the receiver discharged. In such cases the assets are treated as still belonging to the firm, and the creditors must proceed in any way that they may lawfully to acquire a lien which would entitle them to priority over less diligent creditors. In the case of *Adams v. Hackett,* 7 Cal. 187, the question was whether the property in the hands of a receiver appointed by the court in an action for the dissolution of a partnership, vested in the receiver appointed so as to prevent a creditor of the firm from gaining any advantage over the other creditors by adverse proceedings. In the opinion, by Barnett, J., it is held:

"In a case where one partner has filed his petition for the dissolution of the partnership and appointment of a receiver, it seems that until dissolution has been judicially declared and the receiver ordered to make *pro rata* distribution of the assets among the creditors they are not prevented from resorting to adverse proceedings and thereby gaining a preference."

In the separate opinion of Terry, J., who concurred in the result, but filed a separate opinion, it is stated:

"A fund in the possession of a receiver can only be distributed by order of court in whose custody it is and no party can by adverse proceedings acquire a lien over it. Where, too, it appears that the partners, parties to a suit for dissolution, held a judgment against a third party, which was never reduced to possession or under the control of the receiver, the appointment of a receiver would not operate to

prevent the sale or transfer of any property not so reduced to possession within a reasonable time."

Miller, Chief Justice, dissented upon the theory that a judgment is not property.

In the case of *Adams v. Woods and Haskell,* 8 Cal 153, it is held by the same court:

"The creditors of a firm can pursue their remedy at law after a bill for dissolution is filed by one of the partners and before decree of dissolution; any other rule would permit the partners indefinitely to postpone the payment of their debts.

"Creditors can attach the whole proceedings at any time before the distribution of the assets, on the ground that it was instituted to delay, hinder and defraud creditors.

"A bill for a dissolution and the appointment of a receiver cannot operate as an assignment for the benefit of creditors, so as to prevent a creditor from acquiring a legal priority, because all such assignments, except in insolvency, are void under the statute."

Also case of *Naglee v. Minturn et al.,* 8 Cal. 541, by the same court, it is said:

"Pending proceedings for a dissolution between partners, and until a dissolution is finally declared, and a receiver appointed to make a *pro rata* distribution among creditors, the latter are not prevented from resorting to adverse proceedings; and when a creditor does so, he may gain a preference over other creditors."

Also in the case of *Adams v. Woods and Haskell, T. A. Lynch et al. intervenors,* 9 Cal. 24:

"The filing of a bill by one partner against his co-partners for a dissolution and account and praying for an injunction and receiver, and an appointment of a receiver by the court, does not prevent a creditor from proceeding by at-

tachment, and gaining a priority over other creditors, until a final decree of dissolution and order of distribution.

"It is only in cases of insolvency that the equitable rule for *pro rata* distribution will apply, and then as of necessity. If the firm be solvent, a creditor whose claim is due cannot be placed on a par with others whose claims are not yet due, or who have been less diligent in securing claims already due. Funds in the hands of a receiver, in a suit for dissolution, are therefore subject to attachment at any time before a final decree of dissolution and distribution."

In the case of *Waring v. Robinson*, 1st Hoff. ch. 524, it is held that although it is in the power of the partner who has filed such a bill to dismiss it at any time before decree, and probably discharge of receiver, yet until he does so it must be treated as an equitable assignment of the property for all the creditors. And the same doctrine was declared in *Holmes v. McDowell*, 15 Hun. 585, which case was afterwards affirmed in 76 N. Y. 596. That was a case commenced by one partner against his co-partner to adjust the affairs of the partnership, which was insolvent, and to distribute the assets equally among the creditors, and where a receiver was appointed by stipulation. After that suit was instituted, and the receiver appointed, and during the pendency of the suit, other actions were brought against the firm by other creditors, and judgments recovered; and on the application of the plaintiffs in the creditors' action to have the assets in the hands of the receiver distributed to them, it was decided that the judgment recovered by the plaintiff gave them no priority over other creditors, and holds that the action of the partners in causing the receiver to be appointed was in fact an assignment of the partnership assets for the benefit of all the creditors, to be administered by the court or under its

direction; that the partnership property by the voluntary act of the partners was placed in the hands of the court for equal distribution, and that the court had assumed jurisdiction over it for that purpose, and this doctrine is supported in the case of *Van Alystine v. Cook,* 25 N. Y. 489 ; *Monard v. Pond,* 67 Mo. 315.

In the California cases cited the attachment had been levied upon the property found in the hands of the receiver, and the creditors thereby claimed a lien. In this case it cannot be contended that the judgment of the plaintiff created any lien upon the personal property and effects of the firm of Field & Saxton in the hands of the receiver. No levy of attachment or execution is claimed, or any other process, save the filing of their petition in this case, which they claim entitles them to a lien superior to that of other creditors and the only question in this case is, did the filing of the petition, the creditor's bill, give plaintiff any such lien as will be recognized in equity? It is conceded that the action by the intervenors, the Acme Milling Co. and the Jerome Hill Cotton Co., was before the commencement of this action by plaintiff, and that the order of court was made removing the receiver Barto and appointing J. G. Fessenger, Jr., and ordering the property to be held for the benefit of creditors as their rights might appear, and there is no allegation that the creditors, Acme Milling Co. and Jerome Hill Cotton Co., are attempting to do anything more than secure their *pro rata* share of the funds in the hands of the receiver, and there is no allegation that the receiver, Fessenger, or the present receiver, Dobbin, are guilty of any attempt at fraud. Applying the strictest rules stated in any of the cases cited, how can it be said that the plaintiff has stated such a case as would entitle him

to priority over the other creditors equally meritorious? It cannot be successfully contended that the funds in the hands of the receiver were still under the control of Field & Saxton, and that they might at any time dismiss the suit, and with it the receiver, for in this case it is shown in the petition that the creditors had intervened and commenced their action, and that the court had ordered the assets held in the hands of the receiver for the benefit of the creditors of the firm, and that thereby the action had passed beyond the control of the partners, Field and Saxton, as the creditors had inter-ests that the court had assumed to protect, and could not possibly be defeated by any action of the partners who orig-inally commenced the action. And again it will be observed that in the California cases cited it seems to have been con-ceded that if the partnership had been insolvent that then the rights of creditors, as of necessity in equity, would at-tach, while in this case it is not alleged in the petition by Field against Saxton that the partnership is insolvent, but in the petition that the plaintiff filed herein it is alleged that they were at the time of the filing of the petition by the plaintiff and at all the times complained of wholly insolvent, and that collection could not be made of plaintiff's claim un-less from the proceeds of the assets and funds in the hands of the receiver. Therefore, applying that principle, the Cali-fornia authorities might be in point, and sustain our views in this case. It would certainly be inequitable under the facts as alleged in this case, to permit plaintiff to obtain priority over the other creditors simply by filing a creditor's bill, when as is shown by the facts, the court had assumed through its receiver the control of all the assets, and was proceeding to distribute the same among the creditors of the

debtors who are wholly insolvent, and thus necessarily defeat the payment or partial payment of the claims of other meritorious creditors. Courts cannot in equity and justice aid in the enforcement of any such result; and in this position we are supported by other good and credible authority. In the case of *Jackson et al. v. Lahee, etc.,* 2 N. E. Rep. 172, which is very similar in facts and in principle to the case now under consideration, it is held:

"It is not possible to obtain a lien on assets of an insolvent partnership by taking judgment and filing creditor's bill on claim after such assets have passed into hands of a receiver for payment of debts, and the debtors have been called to go before him and prove up their claims."

In that case, the California cases are cited and fully considered. The decisions in the California cases seem to have been based largely upon the statutes of that state providing that all assignments except in cases of insolvency are void, and that a bill for the dissolution of a partnership and the appointment of a receiver should not operate as an assignment for the benefit of creditors by reason of such statute. However, we think that the decisions in the California cases would not be considered good law in this territory, nor do we think that section 2774, Wilson's Statutes, can have any application to this case under the facts as they now exist, for the appointment of Fessenger and the present receiver was not for the purpose of defrauding plaintiff, or the other creditors, but was to conserve and administer the partnership assets in the interest of all the creditors, including plaintiffs, and the order removing Barto, the receiver, against whom plaintiffs complain, and the order preserving the assets in the hands of the receiver for the benefit of all the creditors were made

long before the plaintiffs commenced this action; and that, further, under the provisions of the statutes conceding that the action was originally commenced with the intent to delay and defraud the creditors as alleged in plaintiff's petition, then such action would ·not only be void as against the plaintiffs as creditors, but all other creditors of the firm of Field & Saxton as well. The order of the district court of Pottawatomie county sustaining the demurrer, and the judgment for costs against plaintiffs in error, is affirmed, with costs to plaintiffs in error.

Hainer, J., who presided in the court below, and Burwell, J., not sitting; Gillette, J., absent; all the other Justices concurring.